UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| United States of America | § <br> § <br> § <br> §     SA-21-CR-185-XR <br> § <br> § <br> § <br> § <br> § |
| v. | |
| John Anthony Uriegas-Montez, | |
| Defendant. | |

## ORDER

Before the Court is Defendant's Motion to Suppress (ECF No. 43).

### BACKGROUND[1]

Defendant is charged in an indictment with violating 18 U.S.C. § 922(g) (felon in possession of a weapon). Specifically, the indictment charges that the Defendant on April 13, 2021, was in possession of a Ruger 9mm pistol and a Glock 40 caliber pistol.

On April 13, the Texas Department of Public Safety contacted the New Braunfels Police Department for assistance in serving an arrest warrant on the Defendant at a New Braunfels Red Roof Inn. The NBPD was notified that weapons were possibly located in the hotel room. NBPD confirmed that there was an active warrant for a parole violation and the Defendant was flagged as having violent tendencies. The NBPD dispatched the SWAT team to assist given the concern for weapons.

Once at the hotel (about 11:30 p.m.), NBPD saw other people enter the hotel room and later saw the Defendant exit the hotel room, which was located on the second floor. The Defendant then walked down to the ground floor. The Defendant was apprehended and

---

[1] Background information was gathered from Government Ex. 6 to the suppression hearing, the video recordings (Gov't Exhibits 1-4), and the testimony from the August 29, 2023 hearing.

handcuffed without incident. He was asked whether anyone else was in the room, and he responded three people. He was also asked if there was anything else up there. He responded guns and dope. The Defendant was asked whether he would be willing to call the other three individuals on his cell phone and ask them to exit the room. He agreed to do so and told them that the "law" was outside and to come outside with their hands up. The defendant was not given any *Miranda* warnings at this time.

The three other individuals exited the room and went down the stairs without incident. NBPD officers then entered the hotel room and performed a "protective sweep" to satisfy themselves that no one else was in the room. A "secondary" sweep was also conducted to make sure that no area was overlooked.

Thereafter, the Defendant was asked whether he would go back to the hotel room and show the officers where "everything" was. He agreed and showed the officers his backpack, where handguns were found and a drawer, where a rifle was located. Also found in the backpack was methamphetamine. Several "baggies" containing methamphetamine were found in the toilet.[2] At some point in this process, the Defendant voluntarily and spontaneously informed the police that he had drugs in the sock that he was wearing. The Defendant was then later taken to the NBPD jail or magistrate office for processing. The next morning the Defendant agreed to an interview, and he was then administered his *Miranda* warnings.

## Motion to Suppress

Defendant argues that no exigent circumstances were present that allowed for any questioning of the Defendant, for any protective sweeps to be done, or search of the room since he

---

[2] This is the only fact that Defendant argues may be contested.

was already in custody. He further argues that any statements he made the next day should be suppressed as "fruits of the poisonous tree."

## Analysis

This case presents a close call. On one hand, an argument can be advanced that after the NBPD has arrested the Defendant without incident, because there was no search warrant, any entry into the hotel room was unjustified. If the police were concerned that other people and guns were in the room, they could have merely kept the room under surveillance and sought a search warrant. On the other hand, there was a concern that if others were in the room with weapons, there was a possibility that those persons could pose a danger to the officers below.

Warrantless searches and seizures inside a person's home are presumptively unreasonable under the Fourth Amendment. The presumption of unreasonableness, however, may be rebutted where the occupant gives valid consent to conduct the search, or probable cause and exigent circumstances exist to justify the intrusion. *United States v. Jones*, 239 F.3d 716, 719 (5th Cir.), cert. denied, 534 U.S. 861, 122 S. Ct. 142, 151 L.Ed.2d 94 (2001).

Under the basically agreed to facts of this case, it was reasonable for the officers to ask the Defendant if anyone else was in the hotel room, ask the Defendant for his assistance in calling them to exit the room, and conduct a protective sweep. There was a concern for the officers' safety and the public that required these steps. In any event, no guns or drugs were found during the protective sweeps.

The more difficult question becomes whether it was improper, without first administering *Miranda* warnings, for the officer to ask the Defendant if anything else was in the room and later whether the Defendant would assist in locating the drugs and weapons. This court concludes that

the Defendant provided his voluntary consent to the search.

In the Fifth Circuit, consent is determined based on the totality of the circumstances, and this Court looks at six factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. "Although all six factors are relevant, no single factor is dispositive." *United States v. Alkheqani*, No. 21-10966, 2023 WL 5284055, at *7 (5th Cir. Aug. 17, 2023).

Although Defendant Uriegas-Montez was in custody at the time, all the evidence, including video, demonstrate that no coercive police procedures were used, and the Defendant was completely cooperative with the police (even letting them know he had drugs in his sock). Indeed, though many officers were present, the evidence suggests that the Defendant remained calm and relaxed throughout his interaction with the police. There is no evidence to suggest that he lacks intelligence or mental capacity. The video demonstrates he understood all questions posed to him and communicated clearly. No doubt the Defendant knew that by giving consent and letting the officers know where the drugs and weapons were located, he was aware that incriminating evidence would be found.

The fact that the Defendant was in custody alone does not establish a coerced confession or an inability to consent to a search. *Alkheqani*, 2023 WL 5284055, at *7. "Cooperation by the defendant is a factor favoring a finding that consent was voluntary." *Alkheqani*, 2023 WL 5284055, at *8 (internal citation omitted). "An officer's failure to inform a suspect that he has a right to refuse to consent to a search militates against voluntariness." *Alkheqani*, 2023 WL

5284055, at *8.  An "awareness or belief that some incriminating evidence will be found weighs against a finding of voluntariness."  *Alkheqani*, 2023 WL 5284055, at *9.

This Court concludes that consent was voluntary based on the totality of the circumstances, even though some factors weigh in favor of voluntariness and some against.  Ultimately, what is overwhelming clear in the video recordings is that the Defendant was relaxed and extremely cooperative, and that the law enforcement officers did not employ any coercive measures to obtain the Defendant's voluntary consent.

The motion to suppress (ECF No. 43) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 6th day of September, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE